# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**LARRY STEVENSON**                                                                           **PLAINTIFF**

**VS.**                                       **CIVIL ACTION NO. 5:12cv117-KS-MTP**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security**                                                     **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Larry Stevenson brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner denying a claim for supplemental security income ("SSI"). The matter is now before the court on the Defendant's Motion to Affirm the Decision of the Commissioner [19] and on Plaintiff's Motion for Summary Judgment [16] seeking reversal of the Commissioner's decision. Having considered the pleadings, the transcript of the record, and the applicable law, and being thus fully advised in the premises, the undersigned recommends that the Commissioner's decision be AFFIRMED.

## Procedural History

Plaintiff applied for SSI under the Social Security Act on May 5, 2009. [14] at 129.[2] Plaintiff claimed disability due to high blood pressure, stomach problems, diabetes, and heart attack with an original onset date of August 15, 2000. [14] at 134. The claim was denied initially on October 13, 2009. [14] at 89. Plaintiff requested reconsideration and the claim was again

---

[1] Effective February 14, 2013, Carolyn W. Colvin became the acting Commissioner of the Social Security Administration.

[2] For ease of reference, the administrative record is cited to herein by reference to the court docket number and docket page number in the federal court record [NOT the Administrative Record page number].

1

denied on December 30, 2009. [14] at 96.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on January 26, 2010. [14] at 99. On December 2, 2010, the hearing requested by Plaintiff was convened before ALJ Wallace E. Weakley. [14] at 43-47. The ALJ heard testimony from Plaintiff and Joe Hargett, a vocational expert ("VE"). [14] at 62-86. At the hearing, the alleged onset date was amended to May 5, 2009. [14] at 64.

Employing the five-step sequential evaluation process specified in 20 C.F.R. § 416.920(a), on December 21, 2010, the ALJ rendered his decision that Plaintiff was not disabled within the meaning of the Social Security Act. [14] at 20-27. Plaintiff then requested review by the Appeals Council on February 16, 2011. [14] at 10. The Appeals Council found no basis for changing the decision of the ALJ, and on June 21, 2012, denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. [14] at 4-6.

Plaintiff, proceeding *in forma pauperis*, filed a complaint in this Court on August 20, 2012, seeking an order reversing the Commissioner's final decision. [1] at 1-2. The Commissioner answered the complaint denying that Plaintiff is entitled to any relief. [13] at 1-3. The parties have filed dispositive motions and briefs and the matter is now ripe for review.

**Medical/Factual History**

Plaintiff was fifty-three years old at the time of the hearing before the ALJ on December 2, 2010. [14] at 65. Plaintiff has a high school education, is married, rents a home with his wife, and has never had a valid driver's license. [14] at 66. Plaintiff has past experience doing carpentry and construction work. [14] at 67. Plaintiff has not been employed since 1999 when his construction job at a hospital "ran out of work." [14] at 67.

The record reflects that Plaintiff has a history of medical concerns, including a past heart attack, diabetes, vascular disease, and hypertension. [14] at 257-61. In an ophthalmology visit on February 2, 2002, the presence of type 2 diabetes was noted by the physician. [14] at 206. On May 12, 2003, Plaintiff went to the emergency room ("ER") at Field Memorial Community Hospital ("FMCH") after losing consciousness. [14] at 192-95. On exam, he complained of chest pain and discomfort but had normal range of motion; Plaintiff was discharged the following day. [14] at 192-95. On May 28, 2003, and March 8 and June 10, 2004, Plaintiff received checkups for stomach problems and medication adjustments at FMCH Clinic. [14] at 247-48.

On March 14, 2006, Plaintiff had a cholesterol appointment at the Diabetes Management Clinic at University Hospital and Clinics. [14] at 207. Plaintiff complained of pain in his right calf. [14] at 210. Treating physician, Dr. Nimo, noted that the patient had stopped taking his medication and had missed two scheduled visits. *Id.* At a follow-up appointment in December of 2006, Plaintiff had no complaints. [14] at 215. On January 31, 2007, results of a liver ultrasound revealed Plaintiff likely had a fatty liver. [14] at 217.

In March of 2007, Plaintiff visited the ER at FMCH, vomiting and complaining of intense abdominal pain. [14] at 196. The discharge diagnosis included acute pancreatitis, active alcohol use, ischemic cardiomyopathy,[3] cigarette smoking, type 2 diabetes, and hypertension. [14] at 196. On April 16, 2007, Plaintiff returned to the Diabetes Clinic and was found in stable condition. [14] at 221.

---

[3]Ischemic cardiomyopathy is a lack of blood supply to the heart causing the left ventricle (heart's main pumping chamber) to become enlarged, dilated, and weak. *See* http://my.clevelandclinic.org/heart/disorders/heartfailure/ischemic_cardiomyopathy.aspx (last visited 7/12/2013).

In April of 2009, Plaintiff visited FMCH Clinic, where a physician noted swelling in the left great toe. [14] at 233. On May 19, 2009, Plaintiff had a partial amputation of his left great toe as a result of gangrene and osteomyelitis.[4] [14] at 227. In May and June of 2009, Plaintiff visited FMCH Clinic several times, and the partial amputation appeared to be healing well. [14] at 237-43.

Plaintiff visited FMCH Clinic on July 20, 2009, after waking up with a bleeding left ear. [14] at 253. He was diagnosed with traumatic otitis externa[5] and given a prescription. *Id.* On August 27, 2009, a disability evaluation, including a chest x-ray, was conducted. [14] at 256. A note was made of a possible lateral osteophyte formation[6] of the mid thoracic spine. *Id.*

On August 27, 2009, Dr. Alvin Brent performed a medical consultation alongside Disability Determination Services ("DDS") Examiner, Latasha Grant. [14] at 257. Plaintiff alleged disability on the basis of high blood pressure, heart attack, and diabetes. *Id.* On examination, Dr. Brent noted Plaintiff's history of medical problems but found no other issues. [14] at 257-61. He had full range of motion of his neck, lumbar area, and upper and lower extremities; no back/neck tenderness or spasms were identified. *Id.* The Romberg test[7] was not

---

[4]Osteomyelitis is an inflammation of the bone, generally caused by an infection. *Dorland's Illustrated Medical Dictionary* 1289 (29th ed. 2000).

[5]Otitis externa is "inflammation of the external auditory canal." *Dorland's Illustrated Medical Dictionary* 1292 (29th ed. 2000).

[6]An osteophyte is a bony, abnormal growth. *Dorland's Illustrated Medical Dictionary* 1290, 631 (29th ed. 2000).

[7]The Romberg test is typically used to test the equilibrium, requiring patients to stand with their feet together and hands by their sides while closing their eyes. *See* http://www2.webster.edu/~davittdc/ear/romberg/romberg.htm (last visited July 26, 2013).

completed due to pain in Plaintiff's left foot, but the straight-leg raising test was negative. *Id.*

On October 13, 2009, Dr. Glenn James, a DDS Physician, completed the Residual Functional Capacity Assessment ("RFCA"). [14] at 270. Dr. James provided that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for a total of six hours in an eight hour workday, sit for a total of six hours in an eight hour workday, and had unlimited ability of push and/or pull; however, no explanation was provided for these designations. [14] at 264. Dr. James identified no postural, manipulative, visual, communicative, or environmental limitations in Plaintiff. [14] at 265-67.

On July 21, 2010, Dr. Nimo, Plaintiff's primary treating physician, provided a medical assessment of Plaintiff's condition. [14] at 271-72. Dr. Nimo stated that when standing/walking for a long period of time, Plaintiff experienced low back pain, radiation into the left leg, pain in the left foot, pain in the calves, fatigue, and shortness of breath. [14] at 271. Further, Dr. Nimo indicated that Plaintiff's left hand experienced sporadic numbness, swelling, and pain. *Id.* Dr. Nimo concluded that Plaintiff was unable to stand or walk six hours in an eight hour day, stand/walk two hours while lifting 20 pounds, stand/walk two hours while lifting 10 pounds, stand/walk two hours in an eight hour day, or sit for six hours in an eight hour day. *Id.*

On August 5, 2010, Plaintiff reported to physicians at FMCH Clinic that he was experiencing pain when walking more than two blocks. [14] at 276. On August 10, 2010, Plaintiff was admitted to FMCH complaining of abdominal pain. [14] at 281. He was discharged on August 12 with a diagnoses of: acute abdominal pain with unclear etiology,[8] alcohol use, type

---

[8]Abdominal pain of unknown origin, "having a short and relatively severe course." *Dorland's Illustrated Medical Dictionary* 626, 25 (29th ed. 2000).

2 diabetes, hypertension, ischemic cardiomyopathy,[9] peripheral vascular disease,[10] alcohol related thrombocytopenia,[11] and cigarette smoking. [14] at 283. During a follow-up appointment on August 19, 2010, Plaintiff stated that his lower abdomen was still tender. [14] at 273.

During the hearing before the ALJ on December 2, 2010, Plaintiff testified that he had leg problems due to poor circulation. [14] at 69. He stated that he was unable to walk more than two blocks at a time, could only remain standing for about an hour at a time, and could only remain sitting for 40 minutes at a time. [14] at 70-72. He further testified that he was only able to lift around 20 pounds and occasionally carry 40 pounds. [14] at 74-75. Plaintiff provided an affirmative response when asked if he would be able to work in a job where after an hour, he could "sit down for a while and get back up and work a little bit more." [14] at 76. Plaintiff also acknowledged that he often had trouble getting out of the bathtub and required assistance from his wife. [14] at 77. Because of the foregoing, Plaintiff testified that his conditions have prevented him from being able to find work. [14] at 69-70.

**Burden of Proof**

In *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988), the Fifth Circuit detailed the shifting burden of proof that applies to a disability determination:

---

[9]*See supra*, footnote 3.

[10]Peripheral vascular disease is a disorder of the heart's circulatory system, caused by fatty material build-up within the heart vessels. *See* http://www.emedicinehealth.com/peripheral_vascular_disease/article_em.htm (last visited 7/12/13).

[11]Thrombocytopenia is an alcohol-induced reduction in platelets. *Dorland's Illustrated Medical Dictionary* 1836 (29th ed. 2000).

6

An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled. In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):

> 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
> 2. An individual who does not have a 'severe impairment' will not be found to be disabled.
> 3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
> 4. If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

(citations and footnotes omitted).[12] A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell*, 862 F.2d at 475.

**The Administrative Law Judge's Analysis in This Case**

After a hearing and upon considering the testimony and medical records, the ALJ rendered his decision on December 21, 2010. [14] at 20-27. At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since May 5, 2009, the date of his application for benefits. [14] at 22. At step two, he

---

[12]20 C.F.R. § 404.1520 sets forth the five-step sequential analysis applicable to an application for a period of disability or disability insurance benefits (or both). The same five-step sequential analysis for SSI is set forth in 20 C.F.R. § 416.920.

found that Plaintiff suffers from the following severe impairments: status post amputation left foot great toe, status post myocardial infarction,[13] and circulation problems in the lower extremities. *Id.* In determining whether Plaintiff's impairments were severe, the ALJ used the standard set forth in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) and found that Plaintiff's diabetes, hypertension, and abdominal pain do not cause more than minimal work-related restrictions and are nonsevere.[14] *Id.*

At step three, the ALJ determined that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, subpart P, Appendix 1. *Id.* Next, the ALJ assessed Plaintiff's Residual Functional Capacity ("RFC"),[15] and found that he retained the capacity to perform light work as defined in 20 C.F.R. § 416.967(b).[16] In making this determination, the ALJ considered Plaintiff's symptoms and the extent to which they can be reasonably accepted as consistent with the

---

[13] A myocardial infarction is commonly known as a heart attack. *See* http://www.webmd.com/heart-disease/understanding-heart-attack-basics (last visited 7/12/13).

[14] The standard under *Stone v. Heckler* for assessing the severity of an impairment is determined by the effect the impairment would have on Plaintiff's ability to work. *Stone*, 752 F.2d 1099 (1985).

[15] "Residual Functional Capacity" is defined in the Regulations as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. § 416.945.

[16] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

objective medical evidence and other evidence,[17] and also considered the opinion evidence.[18] [14] at 23.

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC assessment. [14] at 24. The ALJ noted that there has been no indication of problems following Plaintiff's partial amputation, but that Plaintiff has experienced diffuse significant atherosclerotic changes[19] with decreased blood flow into the ankles and feet. [14] at 24-25. He further noted that Plaintiff reported pain when walking more than two blocks. [14] at 25.

In considering the opinion evidence, the ALJ gave considerable weight to the state agency physician's assessment that Plaintiff was capable of performing work at the light level of exertion but noted that he considered the whole record in determining further limitations. *Id.* The ALJ noted Dr. Nimo's assessment, as the treating physician, that Plaintiff could not stand or walk six hours in an eight hour day, stand/walk two hours in an eight hour day while lifting/carrying up to 20 pounds, stand/walk two hours in an eight hour day while lifting/carrying up to ten pounds, stand/walk two hours in an eight hour day, or sit six hours in an eight hour day. *Id.* The ALJ gave little weight to Dr. Nimo's opinion, stating that it was not supported by the medical

---

[17]*See* 20 C.F.R. § 416.929 and SSRs 96-4p, 96-7p.

[18]*See* 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p and 96-3p.

[19]Associated with atherosclerosis, a thickening of the arteries as a result of plaque build-up. *Dorland's Illustrated Medical Dictionary* 167 (29th ed. 2000).

evidence in the record or Plaintiff's testimony that he could do light work. *Id.*

The ALJ found that Plaintiff had no past relevant work in accordance with 20 C.F.R § 416.965. *Id.* At step five, the ALJ found that Plaintiff was able to do other work considering his RFC, age, education, and work experience. *Id.* Acknowledging that Plaintiff's ability to perform all or substantially all of the requirements of the light level of work had been impeded by additional limitations, the ALJ relied on the vocational expert's testimony that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as a ticket taker (DOT #344.667-010), gate tender (DOT # 372.667-030), and marker/labeler (DOT # 920.687-126). [14] at 26. Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, since May 5, 2009, the date the application was filed. [14] at 26.

**Standard of Review**

This Court's review of the Commissioner's decision is limited to inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Hames,* 707 F.2d at 164 (citations omitted). However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are

for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell*, 862 F.2d at 475. If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## The Issues[20]

**I. Whether the Commissioner erred in finding that Plaintiff's testimony, combined with the medical evidence of the record and contrary medical opinions, supported a disregard of the treating physician's findings.**

Plaintiff complains that the ALJ committed error in finding that Plaintiff's testimony supported the ALJ's decision to reject the findings of the treating physician. Plaintiff further complains that the ALJ's decision rejected the treating physician's findings without providing contrary medical evidence or a contrary medical opinion. As discussed below, the Court finds that the ALJ applied the correct legal standard in determining whether Plaintiff is disabled by applying the five-step sequential evaluation found in 20 C.F.R. § 416.920. The ALJ reviewed Plaintiff's testimony, along with all the evidence available in the record, and substantial evidence exists to support his findings.

---

[20]The two issues addressed herein are raised in Plaintiff's Brief in the form of four assignments of error [17]. *See* Brief [17] at 1.

In assessing Plaintiff's RFC, the ALJ found that Plaintiff retained the capacity to perform light work as defined in 20 C.F.R. § 416.967(b).[21] In making this determination, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC assessment. [14] at 24. "[A]n ALJ's assessment of a claimant's credibility is accorded great deference." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000); *see also Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Further, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." *Scott*, 770 F.2d at 485.

The ALJ also stated specific reasons for discounting the opinion of Dr. Nimo, Plaintiff's treating physician. For example, the ALJ noted that Plaintiff himself stated he would be able to perform light work. The basis of this finding came from Plaintiff's hearing on December 2, 2010, when Plaintiff affirmatively answered the following question: "Do you think you could do a job where, you know, after an hour you could sit down for awhile and then get back up and work a little bit more, do a job like that?" Plaintiff argues that his affirmative response to this question did not amount to his agreement that he could perform work at the light exertional level. Plaintiff instead questions whether a combination of standing and sitting for five hours constitutes "a little bit" more work.

However, the ALJ did not rely solely on Plaintiff's affirmative response to this one

---

[21]*See supra*, footnote 16.

question. The ALJ considered this testimony in light of the medical record and opinions of several physicians, and found Plaintiff's answer credible.

Moreover, the issue of whether Plaintiff is disabled or unable to work is reserved solely for the Commissioner. *See* 20 C.F.R. § 416.927(e) (stating that an opinion that a claimant is disabled or unable to work is not considered a medical opinion and will not be given any special significance; such issues are reserved for the Commissioner; "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)) ("Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work[;]' . . . [t]hese determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'"); *Claiborne v. Astrue*, 255 F. App'x 854, 857 (5th Cir. 2007) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)(1)) (stating that "the opinion on ultimate issues, such as disability status, is reserved to the ALJ"); *see also Magee v. Astrue*, No. 1:09cv620–HSO– JMR, 2010 WL 6369942, at *6 (S.D. Miss. Oct. 14, 2010) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)(1)) ("[A] statement that an individual is disabled or cannot work is not a controlling medical opinion, and an ALJ is not bound to accept such a statement, regardless of the source."). Further, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981). The ALJ in this case found that the evidence supported a contrary conclusion and was justified in giving little weight to Dr. Nimo's opinion.

Plaintiff complains that no contrary opinion by a treating or examining physician was provided to refute the treating physician's findings. Case law does not require specific contrary

13

medical evidence, but rather provides that an ALJ may not impermissibly rely on his or her own unsupported medical opinions. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1996). The ALJ stated that he gave little weight to the opinion of Dr. Nimo, not relying on his own unsupported medical opinions, but relying primarily on the opinions of two other physicians. Though not required, the ALJ pointed to contrary opinions provided by an examining physician, Dr. Brent, and a state agency physician, Dr. James.

An ALJ may rely on the opinions of a non-treating physician only if he first analyzes the opinions of the treating physician under the regulations as set forth in 20 C.F.R. § 404.1527(c)(2) before rejecting those opinions. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). These factors include the treating physician's length of treatment, frequency of examination, nature and extent of treatment relationship, support of the physician's opinions by the medical evidence of record, consistency of opinion with the medical record as a whole, and specialization of the treating physician. *Id*. at 456. Although the opinions of the treating physician are normally given deference, such opinions may be rejected with a showing of good cause. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). An ALJ may find good cause for rejecting such treating physicians' opinions when those opinions are brief, conclusory, or unsupported by medically accepted diagnostic testing results. *Id.*; *see also Hector v. Barnhart*, 337 F. Supp. 2d 905, 921 (S.D. Tex. 2004).

Here, the ALJ showed good cause for rejecting Dr. Nimo's opinion. The ALJ found that the treating physician's opinions were not supported by the medical evidence because the opinions not only contradicted Plaintiff's own response to the amount of work he was capable of performing, but also contradicted the findings of other doctors reviewing both the patient and the

medical record. In fact, the ALJ quotes from one of the consultation examinations of Plaintiff by Dr. Brent that, "[h]e was able to heel to toe walk without stumbling or loss of balance. He was able to squat and rise from a squatting position without loss of balance." [14] at 259. As a result, Dr. Brent found no restrictions on Plaintiff's activities, contrary to Dr. Nimo's assessment. *Id.* at 257-61. The ALJ further pointed out Dr. James' assessment that Plaintiff was capable of performing light work. *Id.* at 264. Dr. James determined no other limitations would impede Plaintiff's ability of working at a light exertional level. *Id.* at 263-270. Though Plaintiff complains that no contrary medical evidence or opinions were provided, the Court finds the ALJ relied on contrary medical evidence and opinions and was justified in doing so.

The ALJ acknowledged that Plaintiff's ability to perform all of the requirements of light exertion work would be impeded by additional limitations as a result of his injuries. However, he found that a significant number of occupations remained available that would fall within Plaintiff's ability and could be found in Mississippi and the national economy. Plaintiff's testimony regarding the kind of work he would be able to do aligns with both the potential occupations provided by the vocational expert at the hearing and the medical record as a whole.[22] The ALJ's decision provided contrary medical opinions, was supported by Plaintiff's own testimony, and was supported by the medical evidence of the record. The analysis of the inconsistency in Dr. Nimo's opinion, combined with the examinations and opinions of Dr. Brent and Dr. James, and the Plaintiff's testimony during the hearing, provide sufficient evidence to support the ALJ's rejection of Dr. Nimo's opinion.

---

[22] As stated above, the VE determined Plaintiff could perform jobs at the light exertional level that exist in significant numbers in Mississippi and the national economy.

## II. Whether the Commissioner erred in disregarding the treating physician's recommendation of disability without recontacting the treating physician.

In his Brief [17], Plaintiff claims the ALJ erred by improperly refusing to give controlling weight to the treating physician's opinion without recontacting the physician for clarification of his opinion. [17] at 25. Recontacting the treating physician was not necessary in this case. Plaintiff cites to 20 C.F.R § 404.1512(e)(1), claiming that this regulation would require the ALJ to recontact the treating physician when his or her report "does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." However, Plaintiff failed to acknowledge that 20 C.F.R § 404.1512(e)(1) is only invoked when the evidence received from the treating physician is inadequate for the ALJ to determine if the applicant is disabled, requiring additional information to make a disability determination. 20 C.F.R § 404.1512.[23] Because the evidence received was adequate to allow the ALJ to make a determination, and a determination was in fact made, the requirement to recontact the treating physician was not invoked.

Plaintiff further cites to SSR 96-5p, stating:

"Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."

After reviewing the entire record, the ALJ found that Dr. Nimo's opinion should not be

---

[23]The Court acknowledges that an amendment to the Social Security Administration rules taking effect March 26, 2012, removes the requirement to initially recontact the treating physician even when evidence is insufficient or inadequate. *See* 77 FR 10651-01 for explanation of this change to 20 C.F.R § 404.1512. Recontacting the treating physician in this case would therefore be unnecessary, regardless of the version applied.

given controlling weight based on the weight of the other medical evidence, the testimony at the hearing, and the findings of the other physicians. Dr. Nimo's opinion did not require clarification and the ALJ was not required to contact him for additional information under these circumstances. The ALJ's decision was supported by substantial evidence and neither a remand, nor a reversal, of the case is warranted.

## Conclusion/Recommendation

The undersigned agrees with the Commissioner's decision that Plaintiff is not entitled to SSI under the Social Security Act and finds that the decision is supported by substantial evidence and utilizes correct legal standards. It is, therefore, the recommendation of the undersigned that the Commissioner's Motion to Affirm [19] be granted and Plaintiff's Motion for Summary Judgment [16] be denied.

## Notice of Right to Object

In accordance with the rules, any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge, and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29

(5th Cir. 1996), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1)(c) (extending the time to file objections to fourteen days).

THIS the 26th day of July, 2013.

                                                s/ Michael T. Parker
                                                United States Magistrate Judge